# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# EASTERN DIVISION

| | |
|---|---|
| **THERESA PHILLIPS**, | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| v. | ) Case No. 1:20-cv-01548-CLM |
| | ) |
| **LEGACY CABINET,** | ) |
| | ) |
| **Defendant.** | ) |

## MEMORANDUM OPINION

Theresa Phillips, a white woman, sues her former employer, Legacy Cabinet (Legacy), alleging that Legacy fired her because of her race, in violation of Title VII and 42 U.S.C. §1981. Doc. 1. Legacy seeks summary judgment. Doc. 14. After considering the evidence, the briefs, and the applicable law, the court will **GRANT** Legacy's motion for summary judgment.

## BACKGROUND

### I.   Phillips' employment with Legacy

Phillips began working for Legacy through a staffing agency in September 2013. Legacy directly hired Phillips about four months later.

Legacy makes cabinets, and Phillips worked mainly in Paint Room 3. Forty-three persons worked in Paint Room 3 when Phillips was fired; 26 were black, eight were white, and seven were Hispanic.

1

Phillips' last assignment was to inspect and repair the cabinets in the "hanging line" in Paint Room 3. The hanging line team was similarly diverse; it consisted of at least six black employees, four white employees, and two Hispanic employees. They generally worked 12-hour shifts, 4 days per week.

Derrick O'Neal, a black male, was the operations manager who supervised all of Paint Room 3. Shane Hanna, a white male, was the assistant supervisor for the hanging line in Paint Room 3. Both O'Neal and Hanna say that Phillips was a good worker. O'Neal even awarded Phillips a $10 gift card for "doing a good job," just days before he fired her. Doc. 15-1 at 16.

## II. Race Weekend

The Legacy plant is in Eastaboga, near the Talladega Superspeedway, and in 2019, October 12–13 was race weekend at Talladega. Legacy was busy in October 2019, so Paint Room 3 employees had to work some weekends, on top of their normal hours. The employees weren't particularly fond of the extra weekend work, especially on race weekend.

On Friday the Eleventh, O'Neal called a meeting to tell the Paint Room 3 employees that they would have to work four hours on Saturday and none on Sunday (*i.e.*, race day). Jay Silinski, a white employee on the hanging line, told O'Neal that working on the weekend was "B.S." and that he would not work on Saturday. Doc. 15-1 at 22. Tavia Craig (Tink), a black male, and Derrick Stockdale, a black male,

2

also complained about working another weekend. Others orally agreed with Stockdale and Tink.

True to his word, Silinski didn't come to work on Saturday. He wasn't alone. Multiple employees—white, black, and Hispanic—were either late or absent without permission. There is no indication that O'Neal disciplined any of these employees for being late or missing work.

The employees that showed on Saturday worked more than four hours. A lot more. They began at 6:00 am and stopped around 5:30 pm. At 5:30 pm, O'Neal gathered everyone in Paint Room 3 and told them that Legacy was shutting down the line for the night, but they would need to work again on Sunday—*i.e.*, race day.

### III.  Phillips' Termination from Legacy

The parties agree that the employees, including Phillips, were orally upset about coming back on Sunday. But they disagree about how Phillips expressed her feelings to O'Neal—and how her actions differed from those of her colleagues. So the court lays out both sides of the story.

**A. Legacy's version of events**

O'Neal testified, "Teresa [Phillips] and a couple more guys kept interrupting while I was trying to get the message across to everyone." Doc. 15-2 at 72. So O'Neal asked the group to let him "finish delivering the message" before asking questions. *Id.* O'Neal testified, "[E]veryone except Teresa kind of backed off and let

me finish talking. She kept interrupting saying it's against the law, that you can schedule us to work on Sunday." Doc. 15-2 at 73. O'Neal testified that he was "kind of shocked at the attitude that [Phillips] was displaying because [he had] never seen her act this way," so O'Neal told Phillips to meet him in his office once he let the other employees go. *Id.* at 75.

Hanna (the assistant supervisor) similarly testified that "every time [O'Neal] would say something, [Phillips] had to say something back." Doc. 15-3 at 47. Particularly, Phillips argued that O'Neal could not make his employees work again on Sunday because they had completed their hours for the week. Hanna testified that O'Neal retorted that he could fire Phillips on the spot, and Phillips responded that was fine with her. Hanna testified, "I think there was a time in there where he told her, you know, that's enough for right now. And she didn't stop, and that's when he told her that she could come with him after it was over with. And she said that she was ready." *Id*. at 47–48.

So O'Neal, Hanna, and Phillips walked to O'Neal's office. O'Neal testified that, along the way, Phillips continued to say that it was illegal to make her work on Sunday. And she added that O'Neal didn't know how to treat his employees. O'Neal says that he then suspended Phillips until Monday so she could go home and think about it. The group then left O'Neal's office.

While Hanna went elsewhere, O'Neal, Phillips, and another employee, Troy Melton, walked close to each other on their way back to Paint Room 3. O'Neal testified that Phillips would stop other employees and say, "This place is going to hell, he's trying to fire me." Doc. 15-2 at 76–77. O'Neal said that Phillips also called him stupid multiple times. O'Neal warned Phillips that if she called him stupid again, he would fire her. O'Neal testified that Phillips responded: "You are stupid, and this place is going to shit." Doc. 15-2 at 78. So O'Neal fired Phillips and asked her to leave.

O'Neal testified that Phillips lingered at the plant, complaining to other employees about how O'Neal treated her. O'Neal then told Phillips that if she didn't leave, he would call the police. O'Neal asserts that Phillips walked to her car, threw her parking decal at him, and drove off.

**B. Phillips' version of events**

Phillips testified that Tink and Stockdale (both black males) were the ones causing a ruckus during the group meeting, not her. Phillips testified that both men "were just loud and cussing," using words such as "hell and damn and the 'f' word." Doc. 15-1 at 82–83. Phillips said in her declaration that she "only spoke up during the meeting after O'Neal looked at [her] and said, 'Do you have something to say?'" Doc. 17-2 at 1. Phillips testified that she responded that "it was unfair that we had been working these late hours and long weeks" and "[w]e're all tired." Doc. 15-1 at

5

84. (Although she testified that she spoke "probably like a minute or two." *Id.*) Phillips also declared that she "was not insubordinate or disrespectful in this meeting" and that she never interrupted O'Neal. Doc. 17-2 at 1-2.

Phillips testified that O'Neal immediately "started blowing up." Doc. 15-1 at 84. That's when Phillips says Hanna heard "O'Neal [tell] her that Alabama was a right to work state and he could set whatever hours he wanted to, to get the job done. And he said he could fire her on the spot." Doc. 18 at 11 (quoting Doc. 15-3 at 39, 74). O'Neal then called Phillips and Hanna up to his office.

Phillips agrees that O'Neal then suspended her until Monday. Doc. 18 at 12, ¶10. She denies, however, saying that O'Neal was stupid or that Legacy was going downhill because of O'Neal.

According to Phillips, as soon as Hanna walked off, O'Neal got in her face, told her she was fired, and said that she shouldn't seek unemployment or another job at a cabinet maker "because he would make sure [she] wouldn't get it." Doc. 15-1 at 90, 100–01. Phillips says that only then—after O'Neal fired her and used his radio to call for police—did she use the word 'stupid': "I wasn't doing anything. I was just standing there. And when he got on there and said I was being irate, then I said that was stupid to call and say something I wasn't doing." Doc. 15-1 at 93.

Phillips says that she did not throw the parking decal at Phillips; it crumbled as she handed it to him. Finally, Phillips says—and Legacy agrees—that Legacy ultimately replaced her with a black female.

## STANDARD OF REVIEW

In reviewing a motion for summary judgment, this court views the facts and draws all reasonable inferences in the light most favorable to the nonmoving party. *See Cuesta v. Sch. Bd. of Miami-Dade Cty.*, 285 F.3d 962, 966 (11th Cir. 2002). Summary judgment is appropriate when there is no genuine dispute of material fact and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a). A genuine dispute of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A "mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party." *Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir. 1990).

## ANALYSIS

As the Background section makes clear, the parties dispute what O'Neal and Phillips said in the minutes before O'Neal fired Phillips. Perhaps Legacy is right: Phillips continually interrupted O'Neal as he tried to talk to the line employees, then called him stupid and criticized his management once in his office. Perhaps Phillips

is right: O'Neal is a boor who snapped at Phillips for merely saying what everyone was thinking.

This "swearing match," as Phillips calls it (doc. 18 at 23), doesn't foreclose summary judgment, however, because Phillips must not only prove that O'Neal fired her; she has to prove that he did so because Phillips is white.[1] As the Supreme Court put it, Title VII is not a "general civility code." *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998). It is a "bedrock principle that not all objectionable conduct or language amounts to discrimination under Title VII." *Reeves v. C.H. Robinson Worldwide, Inc.*, 594 F.3d 798, 809 (11th Cir. 2010) (en banc).

In other words, even if the court accepts Phillips' description of events as true, the court still must grant summary judgment unless Phillips has provided sufficient evidence to allow a reasonable juror to find that O'Neal fired Phillips because she is white—not because O'Neal was angry or a bad manager. And Phillips has no direct evidence that race played any part in O'Neal's decision.

So Phillips must rely on circumstantial evidence. Generally, a plaintiff can survive summary judgment based on circumstantial evidence in one of three ways: (1) the plaintiff meets the burden-shifting standard established in *McDonnell*

---

[1] Phillips brings her race discrimination claim under Title VII of the Civil Rights Act of 1964 and 42 U.S.C. § 1981. Each of these statutes is subject to the same requirements of proof and analytical framework. *See Standard v. A.B.E.L. Servs., Inc.*, 161 F.3d 1318, 1330 (11th Cir. 1998) (Title VII and § 1981 have the "same requirements of proof and use the same analytical framework."). Thus, the court addresses only Phillips' Title VII race discrimination claim but implicitly applies its analysis to Phillips' § 1981 claim.

*Douglas*, (2) the plaintiff presents a "convincing mosaic of circumstantial evidence" sufficient to show intentional discrimination, or (3) the plaintiff provides evidence that the plaintiff's race was a motivating factor in the adverse employment action, thus proving a "mixed motive." *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 800 (1973); *Smith v. Lockheed-Martin Corp.*, 644 F.3d 1321, 1328 (11th Cir. 2011) (convincing mosaic); *Quigg v. Thomas Cty. Sch. Dist.*, 814 F.3d 1227, 1239 (11th Cir. 2016) (mixed motive). Phillips does not argue the "convincing mosaic" theory, so the court addresses the other two theories.

### I.     Phillips fails the *McDonnell Douglas* framework.

#### A. The Framework Explained

Phillips can create a jury question on her discrimination claim by satisfying the three-part, burden-shifting framework set out in *McDonnell Douglas Corp.*, 411 U.S. at 800, which the court explains below.

Step 1: Phillips bears the initial burden of showing "(1) that she belongs to a protected class, (2) that she was subjected to an adverse employment action, (3) that she was qualified to perform the job in question, and (4) that her employer treated 'similarly situated' employees outside her class more favorably." *Lewis v. City of Union City*, 918 F.3d 1213, 1220–21 (11th Cir. 2019) (en banc).

Step 2: If Phillips makes out a prima facie case of discrimination, the burden then shifts to Legacy to articulate a legitimate, nondiscriminatory reason for firing Phillips. *See Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981).

Step 3: If Legacy articulates a legitimate non-discriminatory reason, the burden then returns to Phillips to establish that Legacy's proffered reason for firing her was merely a pretext for unlawful discrimination, an obligation that "merges with her ultimate burden of persuading the [factfinder] that she has been the victim of intentional discrimination." *Id.* at 256. Merely contradicting Legacy's proffered reason cannot support an "inference of unlawful discrimination." *Flowers v. Troup Cty.*, 803 F.3d 1327, 1339 (11th Cir. 2015).

**B. Phillips' Prima Facie Case (Step 1)**

The parties agree that (1) Phillips is a member of a protected racial class, (2) Phillips suffered an adverse employment action (*i.e.*, termination), and (3) Phillips was qualified to do her job. So the only disputed element in Step 1 is whether Phillips can show that Legacy treated similarly-situated, non-white employee(s) more favorably.[2]

To meet this burden, Phillips must show that her favorably treated, non-white coworkers "are similarly situated in all material respects." *Lewis*, 918 F.3d at 1226.

---

[2] To the extent that it is needed to make a prima facie case, the court finds that Phillips sufficiently established that she was replaced by a non-white employee. But as explained below, this fact alone does not prove that race motivated O'Neal's decision to fire Phillips.

The Eleventh Circuit has listed several factors the court must consider, including whether Phillips provides evidence that she and her comparator:

- engaged in the same basic conduct;
- were subject to the same employment policies, guidelines, and rules;
- were under the jurisdiction of the same supervisor; and
- shared similar employment or disciplinary histories.

*See id.* at 1227–28.

In her opposition, Phillips offers a list of black employees as potential comparators. Many are improper comparators because O'Neal was not their supervisor. But two groups are possibly relevant: (1) employees that O'Neal disciplined but did not fire on other occasions and (2) Tink and Stockdale, who Phillips testified were loud and cussing during the Saturday group meeting.

Legacy argues that the employees in the first group are not proper comparators because O'Neal disciplined them for attendance issues or unsatisfactory performance—not for insubordination—meaning that those employees did not engage in the same basic conduct as Phillips. *See Lewis*, 918 F.3d at 1227 (citing with approval *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 580, 583 (6th Cir. 1992), which held that a plaintiff terminated for "misuse of [an employer's] property" could not rely on comparators allegedly guilty of "absenteeism" and "insubordination"). And Legacy argues that Tink and Stockdale are not proper comparators because

O'Neal did not call them to his office for insubordination. (O'Neal suspended Phillips for her alleged conduct on the floor; he fired her after they went to the office.)

Legacy is right on both counts, if you accept Legacy's versions of events. But the court must accept Phillips' testimony and declaration as true. That means the court must assume that Phillips was not insubordinate during the group meeting; she merely told O'Neal that "it was unfair that we had been working these late hours and long weeks" and "[w]e're all tired." Doc. 15-1 at 84. And the court must assume that O'Neal fired Phillips unprovoked, not because Phillips called O'Neal stupid or questioned his management decisions. Doc. 15-1 at 90, 100–01.

With those caveats, the court finds that a reasonable juror could find either that Phillips was similarly situated to Stockdale and Tink during the Saturday group meeting or to other minority employees that O'Neal called to his office but did not fire. So the court finds that Phillips makes a prima facie case in Step 1, thus shifting the burden to Legacy.

### C. Legacy's Nondiscriminatory Reason (Step 2)

Legacy alleges that O'Neal fired Phillips because she was insubordinate; first during the group meeting when she continued to interrupt O'Neal, then in his office when Phillips called O'Neal stupid and criticized his management. Insubordination is a nondiscriminatory reason to fire an employee, so Legacy meets its Step 2 burden.

### D. Phillips' Proof of Pretext (Step 3)

With both parties having met their intermediate burdens, Phillips must now prove that Legacy's claim of insubordination is pretext, and that O'Neal actually fired her because of her race. *See Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 143 (2000) ("Although intermediate evidentiary burdens shift back and forth under this framework, the ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff."). This is a two-part showing: "A reason cannot be proved to be 'a pretext for discrimination unless it is shown *both* that the reason was false, *and* that discrimination was the real reason.'" *Ring v. Boca Ciega Yacht Club, Inc.*, 4 F.4th 1149, 1163 (11th Cir. 2021) (quoting *St Mary's Honor Ctr. V. Hicks*, 509 U.S. 202, 515 (1993)). In other words, it is not enough for Phillips to prove that she was not insubordinate, as Legacy claims; Phillips must also prove that O'Neal fired her because she was white, as she claims.

Phillips cannot meet this burden. If you accept Phillips' version of events, a reasonable juror could find that Phillips was not insubordinate, and that O'Neal and Hanna's testimony that Phillips was disrespectful and insubordinate shows pretext of *something*. Perhaps O'Neal was angry at the group or the situation and took it out on Phillips. Or maybe O'Neal had it in for Phillips personally.

But proving "pretext of *something*" isn't enough. *Flowers v. Troup County, Ga., Sch. Dist*. 803 F.3d 1327, 1337-38 (11th Cir. 2015). Phillips has to prove that O'Neal and Hanna's testimony that Phillips was insubordinate "was pretext of *discrimination on the basis of [Phillips'] race*." *Id.* at 1138.

Phillips has no evidence from her incident that would prove that O'Neal fired her because she was white. So Phillips instead points to other disciplinary incidents in which O'Neal failed to fire a black or Hispanic employee. But the disciplinary records (docs. 15-5, 17-4), when viewed as a whole, tend to *disprove* Phillips' claim of racial bias. The records show that O'Neal took disciplinary action against 31 individuals; 17 were black, 11 were white, two were Hispanic, and one was not identified by race. Doc. 15-5. Those records show that O'Neal disciplined white employees for similar behavior, without firing them:

- Kelly Pate "got an attitude with Derrick [O'Neal] and told him that was not her job" when O'Neal asked her to reorder a part. So O'Neal took Pate to the office "to explain he wasn't going to put up with a bad attitude." (*Id.* at 15.)

- Chris Tarwater failed to put in his safety glasses after O'Neal twice told him to. So O'Neal took him to the human resource office, where O'Neal told Tarwater that his behavior was "unacceptable and would not be tolerated." (*Id.* at 5).

The common thread between these white employees who O'Neal did not fire, and the two black employees that O'Neal called to his office but did not fire (Tavia Slater

14

and Taneesha Williams)[3], is that according to O'Neal's reports, all four employees "understood" his concern at the end of their meetings. Three of them even said so. *See* Doc. 15-5 at 4 (Williams); 15-5 at 5 (Tarwater); 15-15 at 15 (Pate); 17-4 at 5 (Slater).

The record of Phillips' disciplinary incident likewise contains no evidence that race played a role in O'Neal's decision. O'Neal wrote in an email to human resources that, once he took Phillips up to his office, Phillips "continued to attempt to argue with [him] about the law and that she didn't have to work" and that she "continued to be disruptive." Doc. 15-2 at 62. O'Neal also stated that as they left his office, Phillips "called me 'stupid'" and said "that I didn't know what I was doing and that this place is going to shit because of people like me." *Id.* In other words, O'Neal said that he fired Phillips because she was insubordinate.

Again, the court must assume that a reasonable juror would accept Phillips' version of events, not O'Neal's. But that assumption only gets Phillips half of the way: it would allow a reasonable juror to find that O'Neal's talk of insubordination was pretext of something; it would not allow a juror to decide that it was pretext of racial discrimination. At best, Phillips' reliance on her version of events plus O'Neal's history of disciplining other employees could prove that O'Neal was a

---

[3] Phillips also points to Kathy Groce, a black female who O'Neal observed "using offensive profanity towards her supervisor." Doc. 17-4 at 12. But the record does not identify the object of the profanity or whether O'Neal spoke with Groce in his office or the HR office. *Id.*

boorish boss. But that evidence shows he was *equally* boorish. And that's how Hanna described O'Neal: "he always seemed to treat everybody equally. You know, you might not like what he was doing, but people equally didn't like what he was doing." Doc. 15-3 at 56.

Proving that O'Neal was a harsh supervisor—and that he was especially harsh to Phillips—fails to prove a claim of racial discrimination. "Put frankly, employers are free to fire their employees for a good reason, a bad reason, a reason based on erroneous facts, or for no reason at all, as long as its action is not for a discriminatory reason." *Flowers*, 803 F.3d at 1338. At best, Phillips might prove to a reasonable juror that O'Neal fired her for a "bad reason" or "a reason based on erroneous facts." *Id.* But she presents no evidence that O'Neal fired her because she was white. So Phillips fails to prove pretext under Step 3, and she thus fails to prove discrimination by using the *McDonnell Douglas* framework.

## II. Phillips fails to prove race discrimination under a mixed motive theory.

Phillips also pleaded a mixed-motive theory of discrimination. *See* Doc. 1, ¶ 35 (pleading both a "pretext theory" and "mixed-motive theory"). To survive summary judgment under a mixed-motive theory, Phillips must provide "evidence sufficient to convince a jury" that: (1) Legacy took an adverse employment action against her; and (2) a protected characteristic was a motivating factor for Legacy's adverse employment action. *See Quigg*, 814 F.3d at 1239. Again, the parties agree

that Legacy took an adverse employment action (*i.e.*, termination), so the question is whether Phillips' race "was a motivating factor" in O'Neal's decision to fire her.

The court finds that Phillips fails to prove a mixed-motive case for the same reasons that the court found that Philips could not prove pretext under *McDonnell Douglas*—*i.e.*, Phillips fails to present evidence that would allow a reasonable juror to find that race played a role in O'Neal's decision to fire Phillips. While there may be more than one factor that lead to O'Neal's decision, there is no evidence that race was one of them. So Phillips cannot prove a mixed-motive theory.

## CONCLUSION

Phillips fails to provide evidence that would allow a reasonable juror to find that Legacy fired her because of her race. So the court will **GRANT** Legacy's motion for summary judgment. Doc. 14. The court will enter a separate order carrying out this finding.

**DONE** on December 29, 2021.

_____
**COREY L. MAZE**
UNITED STATES DISTRICT JUDGE